755 F.2d 397
 SHARYLAND WATER SUPPLY CORPORATION, Plaintiff-Appellant,
v.
John R. BLOCK, Individually and as Secretary of U.S.
Department of Agriculture, and J. Lynn Futch,
Individually and as State Director of
the Farmers Home
Administration,
Defendants-Appellees,
and
Dieter Nippert and Wife, Intervenors-Appellees.
 No. 84-2536.
 United States Court of Appeals,
Fifth Circuit.
 March 18, 1985.
 
 Ewers, Toothaker, Eners, Abbott, Talbot, Hamilton, & Jarvis, Neil Norquest, James D. Selman, III, McAllen, Tex., for plaintiff-appellant.
 Daniel K. Hedges, U.S. Atty., Nancy K. Pecht, C.J. (Neil) Calnan, James R. Gough, Asst. U.S. Attys., Houston, Tex., for defendant-appellees.
 Joseph R. Preston, Misson, Tex., for intervenors-appellees.
 Appeal from the United States District Court for the Southern District of Texas.
 Before RUBIN and HILL, Circuit Judges, and CASSIBRY*, District Judge.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 A non-profit water supply company sought to enjoin the Farmers Home Administration (FHA) from disclosing, in response to an inquiry under the Freedom of Information Act, audit reports the company had filed with the FHA pursuant to an application for a loan. The district court denied the application for a preliminary injunction, refusing to recognize a lender-borrower privilege under the Act. Finding no error of law in this conclusion and no abuse of discretion by the district court, we affirm.
 
 
 2
 Sharyland Water Supply Corporation (Sharyland) is defendant in a suit pending in Texas state court brought by Dieter Nippert and his wife, Heide Marie Nippert, in which the Nipperts seek damages for Sharyland's alleged failure to supply water to a mobile home park developed by the Nipperts. The state district judge denied the Nipperts' request to discover Sharyland's financial statements. Invoking the Freedom of Information Act (FOIA),[1] the Nipperts' counsel then requested the FHA to release audit reports that Sharyland had filed with the FHA to obtain a loan. The FHA agreed to release the reports. Sharyland then sued the FHA and the Secretary of Agriculture to block the release.
 
 
 3
 The FOIA is designed to promote the disclosure of information.[2] The Act is therefore to be construed with a view to disclosure, not secrecy, and exemptions from it are not to be read broadly.[3] One who seeks to prevent disclosure of material must prove that the material is within one of the FOIA exemptions.[4]
 
 
 4
 Sharyland alleges that the audit reports are covered by the fourth exemption to the Act, which protects "trade secrets and commercial or financial information obtained from a person and privileged or confidential."[5] The audit reports are patently not trade secrets, but clearly are commercial or financial information obtained from a person. Hence, Sharyland must establish only that, in addition, they are privileged or confidential.[6]
 
 
 5
 Information is "confidential" only if its disclosure "is likely ... to impair the government's ability to obtain necessary information in the future ... or to cause substantial harm to the competitive position of the person from whom the information was obtained."[7] To prove substantial competitive harm, the party seeking to prevent disclosure must show by specific factual or evidentiary material,[8] not conclusory or generalized allegations, that it actually faces competition and that substantial competitive injury would likely result from disclosure.[9]
 
 
 6
 Sharyland is a rural water supply corporation. The corporation is owned by its 5200 members, who receive water from it. Sharyland contends that it competes with both municipalities and subdivision developers who supply water to the subdivisions developed by them. It argues that disclosure of its financial statements would cause it irreparable harm in its relations with contractors, materialmen, suppliers, employees, and landowners.
 
 
 7
 The district court found that any competition Sharyland faces from other water suppliers is insignificant. It also found that contractors who bid to supply Sharyland with goods and services would not likely raise their bids in response to any financial disclosure by Sharyland, and that knowledge of Sharyland's salaries obtained from financial statements would not increase the risk that other employers would try to bid away Sharyland's employees.
 
 
 8
 These findings must be accepted by us unless they are clearly erroneous.[10] We find nothing in the record to undermine confidence in them. We cannot fault the district court for giving little weight to the Sharyland manager's speculative testimony concerning the harms Sharyland would suffer as a result of disclosure of the audit reports. Under Texas law, Sharyland must make the audit reports available to its 5200 members.[11] Texas law does not forbid disclosure by these members. We see no reason to hold erroneous a conclusion that what five thousand people may obtain without even a pledge of nondisclosure is not confidential.
 
 
 9
 Drawing on legislative history, Sharyland also argues that the information is privileged, not under another statute or the common law, but under a "lender-borrower" privilege implied in FOIA subsection (b)(4).
 
 
 10
 The FHA urges that the word "privileged" in subsection (b)(4) embraces only material shielded by privileges recognized at common law or created by statute.[12] An absolutely literal interpretation would, however, defeat any privilege, for virtually every privilege is waived by disclosure to a third party.[13] To have any content, the statute must be read as referring to information that would have been privileged but for the requirement that it be revealed to the government.
 
 
 11
 As thus read, the term "privileged" refers only to privileges created by the Constitution,[14] statute,[15] or the common law.[16] None of these sources recognizes a lender-borrower privilege.
 
 
 12
 The Senate and House committee reports do explain that subsection (b)(4) covers "information customarily subject to the doctor-patient, lawyer-client, [or] lender-borrower privileges," as if the last were a recognized privilege.[17] But these specific passages were part of earlier congressional reports on a prior draft of the Freedom of Information bill that included an exemption for confidential non-commercial and non-financial matters.[18] As noted in a district court decision, "[t]he words 'commercial or financial' were added to the 1964 bill (S. 1666, 88th Cong.2d Sess.1964) which was reintroduced in 1965 as S. 1160. The congressional reports on S. 1160 simply adopted the Senate report on the 1964 bill (S.Rep. No. 1219, 88th Cong., 2d Sess.1964) without altering the commentary to reflect the addition of 'commercial or financial.' "[19] The phrases relied on by Sharyland were carried forward in the committee reports after the proposed statutory language was changed.
 
 
 13
 Considering a similar issue, whether subsection (b)(4) protects noncommercial confidential information, the Court of Appeals for the Eighth Circuit, in Brockway v. Department of Air Force,[20] said, "we are not inclined to subordinate the unambiguous language of the statute to clearly contradictory legislative history. To hold otherwise would be to undermine the principle that enacted legislation should be generally considered the final and authoritative expression of the will of Congress on a matter."[21]
 
 
 14
 The Supreme Court stated in Chamber of Commerce of the United States v. Legal Aid Society of Alameda County that the Freedom of Information Act "creates no privileges.... neither does it diminish those existing."[22] We decline to hold that the Act creates a lender-borrower privilege.
 
 
 15
 Sharyland has, therefore, failed to show a substantial likelihood of success on the merits. We do not foreclose the possibility that it may adduce further evidence at trial but, from the record before us, we find no abuse of discretion in the district court's denial of injunctive relief.[23]
 
 
 16
 The order is, therefore, AFFIRMED.
 
 
 
 *
 District Judge of the Eastern District of Louisiana, sitting by designation
 
 
 [1]
 5 U.S.C. Sec. 552
 
 
 [2]
 Department of Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11, 21 (1976); Charles River Park "A", Inc. v. Department of Housing and Urban Development, 519 F.2d 935, 941 (D.C.Cir.1975); Superior Oil Co. v. Fed. Energy Reg. Com'n., 563 F.2d 191, 204 (5th Cir.1977)
 
 
 [3]
 Department of the Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11, 21 (1976)
 
 
 [4]
 5 U.S.C. Sec. 552(b); Environmental Protection Agency v. Mink, 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119, 127 (1973); Westinghouse Elec. Corp. v. Schlesinger, 542 F.2d 1190, 1197 (4th Cir.1976), cert. denied, 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977)
 
 
 [5]
 5 U.S.C. Sec. 552(b)(4)
 
 
 [6]
 National Parks and Conservation Ass'n v. Morton, 498 F.2d 765, 766 (D.C.Cir.1974)
 
 
 [7]
 Id. at 770; Continental Oil Company v. Federal Power Commission, 519 F.2d 31, 35 (5th Cir.1975), cert. denied, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 794 (1976)
 
 
 [8]
 Pacific Architects & Engineers, Inc. v. Renegotiation Bd., 505 F.2d 383, 385 (D.C.Cir.1974)
 
 
 [9]
 National Parks and Conservation Ass'n v. Kleppe, 547 F.2d 673, 679 (D.C.Cir.1976)
 
 
 [10]
 Fed.R.Civ.P. 52(a); Kleppe, supra note 9 at 679
 
 
 [11]
 Tex.Rev.Civ.Stat.Ann. art. 1396-2.23(B)
 
 
 [12]
 Compare Fed.R.Evid. 501, which reads:
 Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.
 
 
 [13]
 See, e.g., Weil v. Investment/Indicators, Research and Management, 647 F.2d 18 (9th Cir.1981) (waiver of attorney-client privilege by disclosure of communications to third party); Permian Corp. v. United States, 665 F.2d 1214 (D.C.Cir.1981) (corporation waived attorney-client privilege by submitting documents to Securities Exchange Commission in connection with proposed exchange offer for shares); 8 Wigmore, Evidence Sec. 2327 (McNaughton rev. 1961)
 
 
 [14]
 E.g., the fifth amendment
 
 
 [15]
 E.g., Tex.Rev.Civ.Stat.Ann. art. 3715a (Texas' clergyman-penitent privilege)
 
 
 [16]
 E.g., Baird v. Koerner, 279 F.2d 623 (9th Cir.1960) (attorney-client privilege); United States v. Cameron, 556 F.2d 752 (5th Cir.1977) (marital privileges)
 
 
 [17]
 S.Rep. No. 813, H.R.Rep. No. 1497, 89th Congress, reprinted in 1966 U.S.Code Cong. & Ad.News 2418, 2427
 
 
 [18]
 See Brockway v. Department of Air Force, 518 F.2d 1184, 1189 (8th Cir.1975)
 
 
 [19]
 Consumers Union of U.S., Inc. v. Veterans Admin., 301 F.Supp. 796, 802 (S.D.N.Y.1969)
 
 
 [20]
 518 F.2d 1184 (8th Cir.1975)
 
 
 [21]
 518 F.2d at 1189. See also Consumer Prods. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766, 772 (1980); Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973, 980 (1982)
 
 
 [22]
 423 U.S. 1309, 1310, 96 S.Ct. 5, 6, 46 L.Ed.2d 14, 15 (1975)
 
 
 [23]
 Doran v. Salem Inn, Inc., 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); S-1 v. Turlington, 635 F.2d 342, 345 (5th Cir.1981)