02-09-450-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.  02-09-00450-CV

 

 


 
 
 Paula Gaughan and Dean Sanders
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 National Cutting Horse Association
 
 
  
 
 
                                        APPELLEE
 
 


 

 

----------

 

FROM THE 67th
District Court OF Tarrant COUNTY

----------

 

OPINION

----------

 

I.  Introduction

 

          Appellants
Paula Gaughan and Dean Sanders (collectively, Gaughan) and Appellee National
Cutting Horse Association (the NCHA) filed cross-motions for summary judgment
in Gaughan’s suit against the NCHA for a declaratory judgment that the NCHA’s books
and records that Gaughan sought to inspect and copy are not confidential.  The
trial court initially entered a protective order in favor of the NCHA that
prohibited Gaughan from disseminating the NCHA’s books and records to others.  Later,
the trial court granted the NCHA’s motion for summary judgment, denied
Gaughan’s motion for summary judgment, and incorporated the protective order
into the final judgment.  Gaughan contends in three issues that the trial court
erred by entering the protective order and thereby prohibiting her from
disclosing documents designated as confidential by the NCHA, by granting
summary judgment for the NCHA on the ground that the NCHA’s records are
entitled to confidential treatment under the law, by denying her motion, and by
ruling that there are no genuine issues of material fact concerning the
reasonableness and necessity of the NCHA’s attorney’s fees.  We affirm.

II. 
Factual and Procedural Background

          The
NCHA is a non-profit corporation organized and existing under Texas law.  Gaughan
is a member in good standing of the NCHA.[1]  On April 21, 2008,
Gaughan made a written request pursuant to article 1396-2.23 of the Texas
Non-Profit Corporation Act to “inspect the books and various financial records
of the NCHA.”[2]  Gaughan requested six
categories of documents from the NCHA—including employment contracts, bank
statements, payroll records, and payments to vendors—for the stated purpose that
Gaughan was “genuinely interested in fostering increased participation in NCHA
events by lowering the costs associated with that participation and making sure
that the membership dues and other monies received by the NCHA are being spent
with the best interests of the NCHA membership in mind.”  The NCHA responded to
Gaughan’s letter on April 28, 2008, enclosing audited financial statements for
the years 2004 through 2007, but it requested that Gaughan clarify her stated
purpose, pay for staff and professional time necessary to respond to the
request, and agree to maintain the confidentiality of certain information
relating to third parties (such as employees and vendors) before the NCHA would
produce the remaining requested records.

          Gaughan
responded to the NCHA on May 9, 2008, disagreeing that her stated purpose was
inadequate but also clarifying that she wished to review the financial records
to confirm that the “NCHA is not guilty of waste or mismanagement in its
financial affairs and in the administration of the NCHA’s business.”  Gaughan
declined to enter into a confidentiality agreement and objected to paying for
staff or professional fees associated with the NCHA’s compliance with her inspection
request.  Gaughan also requested that all responsive documents be produced
within one week. 

          The
NCHA responded on May 13, 2008, again asserting the confidentiality of some of
its records, specifically records relating to its employees, third-party
vendors, and sponsors.  The NCHA stated that the confidentiality of its records
“does not mean that you cannot have access to some or all of the information
you desire[,] but it does mean that any access you may have must be in accordance
with procedures which are in the best interest of [the NCHA] and include
fulfilling [the NCHA]’s obligation of confidentiality.”

          Gaughan
filed suit against the NCHA on May 20, 2008, seeking a judicial declaration
that she is entitled to inspect and photocopy each of the categories of records
identified in her April 21, 2008 letter.  Gaughan also sought and obtained a
temporary restraining order to prevent the NCHA from destroying or altering the
records she sought to inspect and copy.  The NCHA filed a motion to dissolve
the temporary restraining order and offered to disclose all documents requested
by Gaughan subject to entry of a protective order to prevent her disclosure of
information the NCHA believed to be confidential.  Following the hearing on the
NCHA’s motion, the trial court dissolved the temporary restraining order and
granted the NCHA’s request for entry of a protective order. 

The
trial court then signed a protective order permitting the NCHA to designate
certain documents that it had agreed to produce to Gaughan as confidential (by
stamping “Confidential” in a conspicuous manner on each page to be so
designated) and prohibiting Gaughan from reproducing, disclosing, or
disseminating those documents to anyone other than her counsel except upon
order of the trial court.  The order stated that it was entered solely to
facilitate review and provided that at any time after delivery of documents
designated as confidential, counsel for Gaughan could challenge the designation
by written notice to the NCHA and a motion to challenge the confidential nature
of all or a portion of the information, in which event the NCHA would have the
opportunity to establish that the disputed documents were entitled to
confidential treatment.

          After
entry of the protective order, the NCHA produced 89,214 pages of documents to
Gaughan but designated 36,556 of those pages as confidential as permitted by
the protective order.  It is undisputed that Gaughan reviewed and copied all
documents she requested from the NCHA, including the documents designated as
confidential. The NCHA also counterclaimed against Gaughan, seeking recovery of
its attorney’s fees and a judicial declaration that it had “acted reasonably
and in accordance with the law in responding to [Gaughan’s] requests to review the
NCHA documents.” 

Gaughan
and the NCHA eventually filed cross-motions for summary judgment.  In her
motion, Gaughan requested, among other things, a judicial declaration that
“NCHA may not prevent [her] from disclosing to her fellow NCHA members or to
other third parties the substance and form of all records reflecting the NCHA’s
financial activity.”[3]  Gaughan argued that
articles 1396-2.23 and 1396-2.23A of the non-profit corporation act required
the NCHA to make its books and records available to members and the general
public alike, that the NCHA is therefore precluded from designating any of its
financial records as confidential, and that the trial court should withdraw the
protective order because it contravenes articles 1396-2.23 and 1396-2.23A.  In
addition, Gaughan’s motion for summary judgment included the following
alternative request for relief:

Strictly in the
alternative, and only because [the trial court’s] Protective Order otherwise
requires it and remains in force until it is withdrawn as requested
hereinabove, Gaughan moves the Court to conduct an in camera inspection of the
36,556 pages of NCHA books and records that the NCHA has classified as
confidential and, upon inspection of same, declare that they are not properly
classified as confidential documents given the statutory mandate that they
be made available to the NCHA members and the general public alike. 
[Emphasis added.]

 

The NCHA’s
motion sought summary judgment on its claims for a judicial declaration and
attorney’s fees.  Within the motion, the NCHA argued that Gaughan did not need
to file the lawsuit to obtain the requested documents; that Texas law supports
the trial court’s entry of the protective order; that the protective order
provided a mechanism for Gaughan to challenge the NCHA’s designation of any
document as confidential; and that Gaughan had never challenged the NCHA’s designation
of any document as confidential—despite having possession of the vast majority
of the documents for months—but instead claimed that no information contained
in the documents requested under art. 1396-2.23 could be treated as
confidential and that the protective order regarding the documents requested
was contrary to law. 

In
its final judgment granting the NCHA’s motion for summary judgment and denying
that of Gaughan, the trial court declared that the NCHA had fully complied with
all of Gaughan’s requests to review documents of the association and all legal
requirements, that the NCHA had designated documents as confidential in
accordance with the protective order, that Gaughan had taken no action to
contest the designations, and that the documents designated as confidential by
the NCHA were thus entitled to confidential treatment as a matter of law.  The
trial court further ordered Gaughan to return all records marked as
“Confidential” to the NCHA and to not disclose, disseminate, or reveal any of
the “Confidential” records or their contents to any third parties.  This appeal
followed.

III. 
Standard of Review

          We
review a summary judgment de novo.  Travelers Ins. Co. v. Joachim, 315
S.W.3d 860, 862 (Tex. 2010).  We consider the evidence presented in the light
most favorable to the nonmovant, crediting evidence favorable to the nonmovant
if reasonable jurors could, and disregarding evidence contrary to the nonmovant
unless reasonable jurors could not.  Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge
every reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).  A defendant who
conclusively negates at least one essential element of a cause of action is
entitled to summary judgment on that claim.  Frost Nat’l Bank v. Fernandez,
315 S.W.3d 494, 508 (Tex. 2010); see Tex. R. Civ. P. 166a(b), (c).  When
both parties move for summary judgment and the trial court grants one motion
and denies the other, the reviewing court should review both parties’ summary
judgment evidence and determine all questions presented.  Mann Frankfort,
289 S.W.3d at 848; see Myrad Props., Inc. v. Lasalle Bank Nat’l Ass’n,
300 S.W.3d 746, 753 (Tex. 2009).  The reviewing court should render the
judgment that the trial court should have rendered.  Mann Frankfort, 289
S.W.3d at 848.

IV. 
Discussion

A. 
The Protective Order

          Gaughan
contends in her first issue that the trial court erred by entering the
protective order and declaring by summary judgment that any of the NCHA’s
records regarding its business transactions with sponsors, vendors, and
employees are entitled to confidential treatment under the law.  She contends
the trial court’s orders are contrary to the Texas statutes that require
non-profit corporations to make their financial records open and available for
inspection and copying by the general public.  Specifically, Gaughan argues
that because the NCHA is a non-profit corporation obligated by article
1396-2.23A to make its records, books, and annual reports available to the
public for inspection and copying, it cannot shield those records behind a
claim of confidentiality.  The NCHA responds that a member of a non-profit
corporation may inspect “a much broader spectrum of records” under article
1396-2.23 than the public is entitled to inspect under article 1396-2.23A and
that protective orders are permissible under Texas law to ensure that
confidential information provided to members pursuant to these or similar
inspection statutes is protected from disclosure to others.  

          1. 
Articles 1396-2.23 and 1396-2.23A

          Article
1396-2.23 of the Texas Non-Profit Corporation Act provides:

A. Each corporation
shall keep correct and complete books and records of account and shall keep
minutes of the proceedings of its members, board of directors, and committees
having any authority of the board of directors and shall keep at its registered
office or principal office in this State a record of the names and addresses of
its members entitled to vote.

 

B. A member of a
corporation, on written demand stating the purpose of the demand, has the right
to examine and copy, in person or by agent, accountant, or attorney, at any
reasonable time, for any proper purpose, the books and records of the
corporation relevant to that purpose, at the expense of the member.

 

Tex.
Rev. Civ. Stat. Ann. art. 1396-2.23 (expired Jan. 2010).  Similarly, but not
identically, article 1396-2.23A provides, in relevant part:

A. A corporation
shall maintain current true and accurate financial records with full and
correct entries made with respect to all financial transactions of the
corporation, including all income and expenditures, in accordance with
generally accepted accounting practices.

 

B. Based on these
records, the board of directors shall annually prepare or approve a report
of the financial activity of the corporation for the preceding year. . . .

 

C. All records,
books, and annual reports of the financial activity of the corporation shall
be kept at the registered office or principal office of the corporation in this
state for at least three years after the closing of each fiscal year and shall
be available to the public for inspection and copying there during normal
business hours. The corporation may charge for the reasonable expense of
preparing a copy of a record or report.

 

Id.
art. 1396-2.23A (expired Jan. 2010) (emphasis added).

          2. 
Scope and Purpose of article 1396-2.23A (public’s right to inspect)

          Gaughan
argues that, because article 1396-2.23A mandates public access to the financial
records of a non-profit corporation, the protective order allowing the NCHA to
shield its financial records from public disclosure by designating them as
confidential is contrary to Texas law.  However, Gaughan’s argument is premised
on the incorrect assumption that all of the records of a non-profit corporation
that a member is entitled to inspect and copy are financial records available
to the public generally.  As is clear from article 1396-2.23(B), a member of a
non-profit corporation may, following written demand stating a proper purpose,
examine “the books and records of [that] corporation relevant to that purpose.”
 Id. art. 1396-2.23(B).  Under article 1396-2.23A, however, a member of
the public may only inspect the “records, books, and annual reports of the financial
activity of the corporation.”  See id. art. 1396-2.23A (emphasis
added).  Thus, the NCHA argues, a member of the public may only inspect financial
records of a non-profit corporation while a member of the corporation may
inspect all records of that corporation.  See id. arts. 1396-2.23,
1396-2.23A.

The
records Gaughan received from the NCHA include both financial records available
for inspection by the public and non-financial records not available for
inspection by the public.  For example, Gaughan received vendor, sponsorship,
and employment contracts and documents containing the addresses and Social
Security Numbers of the NCHA’s employees.  Article 1396-2.23A, addressing the
public’s right of inspection, does not provide that the public has the right to
inspect records that are not financial records.  

Moreover,
article 1396-2.23, addressing the right of a member to inspect a broader
spectrum of records than is allowed for the public, provides for neither a
right of inspection by the public of such records nor a right by a member to
publish such information to the public.[4]  Thus, the NCHA argues,
and we agree, that Gaughan’s theory that she is entitled to disseminate or
share with the public all documents she received would engraft a right of inspection
by the public onto article 1396-2.23, which speaks only to the right of
inspection by members.  If the legislature had intended that a member would have
the right to disclose all books and records of a non-profit corporation to the
public, there would have been no need for two separate statutes and no need to
require a member to provide a written request stating a proper purpose.  Therefore,
we decline to adopt Gaughan’s interpretation of the two statutes by conflating
them so as to provide a right of the public to inspect all books and records of
a non-profit corporation, including records only available to members.  

The Texas
Supreme Court has held that the phrase “financial records” in article
1396-2.23A “does not include the names of contributors or members” and that
article 1396-2.23A “does not require the blanket disclosure of contributors’
names for public inspection.”  In re Bay Area Citizens Against Lawsuit Abuse,
982 S.W.2d 371, 381–82 (Tex. 1998) (hereinafter BACALA).  In so holding,
the BACALA court looked to the legislative intent of that statute,
observing that it appeared “that article 1396-2.23A was intended to remedy a
specific problem: the lack of accountability regarding a non-profit
corporation’s use of funds solicited from the public.” Id. at 381 (citing
Texas Appellate Practice & Educ. Resource Ctr. v. Patterson, 902
S.W.2d 686, 689 (Tex. App.—Austin 1995, writ denied)).  In that regard, the
court quoted relevant background information from the bill analysis regarding
article 1396-2.23A’s purpose:

During the
last interim, the author attempted to conduct a study of a non-profit drug
rehabilitation program in Houston.  This program had been soliciting funds from
the public and portrayed itself as a charitable endeavor.  However, there were
rumors that its funds were being used for investments in such businesses as
nightclubs.  During the six month investigation, the author of this bill was
unable to determine how the program’s funds were being used because the records
were inadequate.  A major recommendation from the study was that Texas law
should be amended to require non-profit organizations soliciting funds from the
public to keep adequate records showing how the funds were actually being used.

 

Id. at 381 (quoting Senate Comm. on Bus. & Indus.
Bill Analysis, Tex. S.B. 857, 65th Leg., R.S. (1977)).  Thus, the BACALA
court concluded the purpose of the legislation was not to force non-profit
corporations to identify the exact sources of their income but was instead
designed “to expose the nature of the expenditures of that money once received
from the public and to make non-profit organizations accountable to their
contributors for those expenditures.”  Id.  The court continued, “[T]he
seemingly broad scope of the statute’s language is not matched by the
legislative intent behind the statute.”  Id.; see also Patterson, 902 S.W.2d at 688–89 (concluding
legislature designed art. 1396-2.23A as a mechanism for making non-profit
corporations accountable for donations solicited from the public).

It
follows that, although amounts received from or paid to vendors, sponsors, or
employees may constitute “financial records,” the underlying contracts
themselves (or the employees’ addresses and social security numbers) are not
financial records that the public is entitled to inspect.  See BACALA,
982 S.W.2d at 381–82.  Thus, even assuming that the public is entitled by
art. 1396-2.23A to inspect all financial documents of a non-profit corporation
without regard to confidentiality, a question we are not called upon to decide,
we must still determine whether documents Gaughan may inspect under art. 1396-2.23
(and which are not available to the public) may be subject to protection from
disclosure to others because of confidentiality considerations.[5] 


3.  Scope
and Purpose of article 1396-2.23 (member’s right to inspect)

Gaughan
asserts that the scope of article 1396-2.23, which provides for the inspection
rights of a member of a non-profit corporation, is absolute in prohibiting any
record from being treated as confidential and does not allow a non-profit
corporation to require a pledge or order of non-disclosure in order to inspect
and copy its records.  We disagree for reasons urged by the NCHA.

          Decisions
under article 1396-2.23 recognize that the statute is not absolute in its
disclosure requirements for members and that orders to protect confidential information
are proper in requests made under that statute.  In Citizens Ass’n for Sound
Energy (CASE) v. Boltz, 886 S.W.2d 283, 285–86 (Tex. App.—Amarillo 1994,
writ denied), cert. denied, 516 U.S. 1029 (1995), a member of CASE, a
non-profit association, sought review of CASE’s records under article 1396-2.23.
 CASE opposed the production of certain documents and challenged the constitutionality
of the statute.  Id. at 286.  The trial court entered a protective order
addressing the confidential nature of the requested documents and ordered CASE
to produce such documents under that protective order.  Id. at 287.  On
appeal by CASE, the court of appeals affirmed, holding that in view of the
protective order which prohibited the member from disclosing the confidential
information contained in such documents, CASE’s challenges to the statute were without
merit.  Id.

In Professional
Microfilming, Inc. v. Honorable Sam Houston, 661 S.W.2d 767, 768 (Tex. App.—Fort
Worth 1983, orig. proceeding), a case in which mismanagement of Professional
Microfilming, Inc. (PMI) was alleged, this court considered a financial records
request by a shareholder and former director of PMI.  On mandamus, PMI
complained of a discovery order by the trial court that would have allowed the
shareholder, who had become a competitor of PMI, to review records containing PMI’s
sensitive customer, cost, and pricing information pursuant to a request made
under business corporations act article 2.44.[6]  Id. at 768–69.  PMI
asserted that any such review of PMI’s confidential information by the
shareholder would be damaging to PMI.  Id.  The trial court required PMI
to produce the information but entered an order prohibiting the shareholder and
former director from disclosing any of the contents of those records to third
parties.  Id. at 769.  In denying mandamus relief sought by PMI, this
Court stated:

We also hold that
Judge Houston’s discovery order adequately considered the sensitivity of the
requested data, and the potential for misuse of that data by Hightower and
Eikon.  Judge Houston’s order enjoined Hightower from disclosing the
information or using it for purposes other than those connected with the
litigation.  The order also provided that the documents requested to be
produced be sealed in envelopes and filed with the court, to be opened only by
order of the court.  Judge Houston thus set up a procedure which would allow
him to examine each document before disclosing it to Hightower, and impose even
greater restrictions than the initial injunction if necessary.

 

Id. at
770 (emphasis added).  Thus, we acknowledged in PMI that the need to
protect certain confidential information from dissemination to others may exist
even when a statutory right to inspection by the shareholder is invoked. 
Id.; see also Lewis v. Pa. Bar Ass’n, 701 A.2d 551, 555 (Pa. 1997) (holding
documents otherwise accessible to members may be protected from disclosure to
third parties by considerations of privacy, such as references to employee’s
health records; privilege, such as records protected by attorney-client
privilege or work product doctrine; or confidentiality where both corporate
purpose and public’s interest are served by keeping information confidential); Stroud
v. Grace, 606 A.2d 75, 89 (Del. 1992) (holding corporation’s refusal to
provide certain financial information to shareholder without confidentiality
agreement signed by shareholders did not violate corporation’s duty of
disclosure); Pershing Square, L.P. v. Ceridian Corp., 923 A.2d
810, 819–20 (Del. Ch. 2007) (holding publication to others by shareholder may
be limited where information is confidential and release would harm company); Disney
v. The Walt Disney Co., 857 A.2d 444, 446 (Del. Ch. 2004) (holding that shareholder
could not use right of inspection to publicly disseminate otherwise
confidential records and that production was properly conditioned upon confidentiality
agreement, subject to challenge of company’s designation in court if parties
could not resolve disagreements).

Gaughan relies upon Sharyland Water Supply Corp. v.
Block, 755 F.2d 397 (5th Cir. 1985), as the single case to support her
position.  Gaughan cites a statement from the opinion in that case for the
proposition that article 1396-2.23 neither forbids a member from disclosing
books and records provided to him by a non-profit corporation nor requires the
member to pledge non-disclosure to others in order to obtain the corporation’s
books and records.  Id. at 398.  But Sharyland does not support
the proposition that no restrictions on dissemination to others can be placed
on an article 1396-2.23 request by a member of a non-profit corporation.  That
case did not deal with the right to inspect books and records under article
1396-2.23; rather, it involved a Freedom of Information Act request made to a
third party to whom the corporation had provided information as part of a loan
application.  Id.  Moreover, Sharyland is distinguishable because
it involved audited financial statements that a member of the public is
entitled to inspect under article 1396-2.23A.  Id. at 399.  The NCHA
does not dispute that its audited financial reports are subject to disclosure
under the Freedom of Information Act. 

In
addition, a member’s own right to inspect and copy books and records under article
1396-2.23 does not trump privileges or other rights to confidentiality provided
for by Texas law.  In Huie v. DeShazo, 922 S.W.2d 920, 923–25 (Tex.
1996), the supreme court held that a trustee’s duty of disclosure does not
override the attorney-client privilege and expressly rejected a claim that the
provisions of article 1396-2.23 overrode a claim of attorney-client privilege.  In
analyzing an argument similar to the one made by Gaughan in this case, the
Texas Supreme Court held as follows:

[Real party in
interest] Chenault relies on Burton v. Cravey, 759 S.W.2d 160 (Tex. App.—Houston
[1st Dist.] 1988, no writ), for the proposition that the attorney-client
privilege does not apply where a party has a right to information independently
of the rules of discovery.  In Burton, condominium owners filed a trial
court mandamus action against the condominium association to enforce their
statutory right to inspect the association’s books and records.  See
Tex. Prop. Code Ann. § 81.209; Tex. Rev. Civ. Stat. Ann. art. 1396-2.23.  The
trial court allowed inspection of the records, including those in the
possession of the association’s attorney, finding as a factual matter that the
attorney’s records constituted part of the association’s records.  The court of
appeals affirmed, holding that the attorney-client privilege did not apply in
light of the owners’ unqualified right of inspection.  759 S.W.2d at 162.

 

It is unclear whether the records at issue in Burton
were merely records of the association in the possession of the attorney, or
whether they contained separate confidential attorney-client communications.  To
the extent that they consisted of the former, we agree that they were not
protected.  See [Nat’l Tank Co. v.] Brotherton, 851 S.W.2d
[193,] 199 [(Tex. 1993)].  However, to the extent that the court held that
the owners’ statutory right of inspection somehow trumped the privilege for
confidential attorney-client communications, we disapprove of its holding, for
the reasons previously discussed.  We also disapprove of the court’s dicta that
the trial court could, in its discretion decline to apply the attorney-client
privilege even if all the elements of Rule 503 were met. See 759 S.W.2d at
162.

 

Id. at 924
(emphasis added).  Other jurisdictions agree.  See Schein v. N. Rio Arriba
Elec. Coop., Inc., 122 N.M. 800, 806 (N.M. 1997) (holding corporate
documents subject to attorney-client privilege may be withheld from
shareholders but upholding denial of protection for information examined by
trial court in camera and found not to contain indicia of confidentiality); Nat’l
Football League Props., Inc. v. Superior Court, 75 Cal. Rptr. 2d 893, 898
(Cal. Ct. App. 1998) (holding shareholder status does not in and of itself
entitle an individual to unfettered access to corporate confidences); Riser
v. Genuine Parts Co., 150 Ga. App. 502, 504 (Ga. Ct. App. 1979)
(holding trial court did not err by denying corporate information to
shareholder that contained confidential management information, legal opinions,
and personnel evaluation in absence of compelling reason); Morton v. Rogers,
20 Ariz. App. 581, 586 (Ariz. Ct. App. 1973) (holding right of director and
shareholder to examine books and records does not extend to trade secrets); see
also In re LTV Secs. Litig., 89 F.R.D. 595, 604 (N.D.
Tex. 1981) (applying federal law in securities fraud suit and recognizing
shareholder’s statutory or common law right to inspection could not overcome
otherwise valid assertion of attorney-client privilege); 5A FLETCHER CYCLOPEDIA
OF THE LAW OF CORPORATIONS § 2239.10 (2011) (collecting cases holding
shareholders not entitled to trade secrets or confidential information
contained in books and records of corporation unless such affects financial
status of corporation or value of stock).[7]

Moreover,
by accepting and renewing her membership each year in the NCHA, Gaughan has agreed
to abide by the rules, policies, and agreements made by the NCHA.  Gaughan has
not disputed that those rules include the Employee Handbook and the Financial
Disclosure Policy and Procedure adopted by the executive committee of the NCHA
in 2004, which contain the association’s policies for treating employee and
third party business information as confidential.  By its Employee Handbook and
the Disclosure Policy, the NCHA makes representations to its employees,
vendors, sponsors, and other persons with whom it does business that it will
maintain certain information as confidential.  Gaughan disputes that any
employment contract or business agreement with vendors or sponsors produced to
her by the NCHA contain confidentiality agreements, but the documents in
question have not been made a part of the record on appeal.  In any event, the Disclosure
Policy limits the right of the NCHA and its members to further disseminate such
information to others because the NCHA has an obligation to protect the
information as confidential. Gaughan has not argued or cited any authority to
the effect that she cannot contractually agree not to disseminate to the public
or the press any confidential information provided to her as a member.      

That
Gaughan may be entitled to review the requested records under the applicable
statute as a member of the corporation does not mean that she can do so without
maintaining the confidentiality of information contained in those documents as
agreed by her and as ordered by the trial court.  The above-referenced cases
recognize that fact.  The same type of prophylactic protective order afforded
in both CASE and PMI was properly afforded by the trial court in
this case; that is, Gaughan’s receipt, inspection, and copying of the books and
records of the NCHA was subject to the procedure outlined in the order
prohibiting her from sharing with others the documents designated “Confidential”
by the NCHA unless she challenged the confidential designation of specific
documents or categories of documents, providing the NCHA the opportunity to
furnish proof to support its designation of confidentiality.  We agree with the
NCHA that this is the only way to balance and reconcile Gaughan’s statutory
right to review such documents and the NCHA’s duty to maintain as confidential
third party business information contained in those documents.

4.       Confidentiality
as to other members of the NCHA

On
appeal, Gaughan has argued that she only wishes to share the documents in
question with her fellow members of the NCHA, not the general public, in order
to enable the membership to make informed decisions as to their votes for
officers and directors as well as to participate in governance by determining
the most reasonable and prudent course for the future of the association.  But
we note that Gaughan requested in both the trial court and in this court that
the protective order be set aside in its entirety, which would enable her to
publish all of the information to the press and public as well as her fellow
members.  Moreover, the NCHA is a national organization with over 20,000
members.  The NCHA acknowledges that other members have a right to review its
records upon written request for a proper purpose stated.  However, the Texas
statutes make the NCHA the respository of its books and records.  If other
members request inspection, the NCHA is entitled to require those members to
agree to abide by its disclosure policy or to enforce that policy as to
confidential information just as it did as to Gaughan.   If Gaughan is allowed
to disseminate those records to other members, the NCHA will be unable to track
the dissemination or to require that those other members abide by its
Disclosure Policy as to confidential information to ensure that the confidential
information is protected.

Because
Gaughan received records from the NCHA that the public does not have the right to
inspect under article 1396-2.23A, and because her right to inspect and copy
those documents was subject to protection from further disclosure as
confidential, the trial court did not err by entering the protective order or
by declaring that the records produced to Gaughan were subject to confidential
treatment prohibiting her from further disseminating them to others.  Moreover,
because it is undisputed that the NCHA produced to Gaughan all records that she
requested, the trial court did not err by declaring that the NCHA “fully
complied with all legal requirements relating to [Gaughan’s] requests to review
records of the association.”  We therefore overrule Gaughan’s first issue.[8]

B. 
Designation of Documents as Confidential Under Protective Order

Gaughan
argues in her second issue that the trial court erred by declaring that the NCHA’s
financial records are entitled to confidential treatment under the law because
it did not examine the records in camera to determine whether the assertion of
confidentiality was valid.  The NCHA responds that Gaughan did not follow the
terms of the protective order to challenge the designation of any records as
confidential. 

After
the trial court entered the protective order, the NCHA produced 89,214 pages of
documents to Gaughan and designated 36,556 of those pages as confidential.  The
protective order provided that “any time after the delivery of Confidential
Information, counsel for [Gaughan] may challenge the Confidential designation
of all or any portion thereof by providing written notice thereof to counsel
for the NCHA” and that if the parties could not reach an agreement, Gaughan
could “file a motion with the Court to challenge the confidential nature of all
or a portion of the Confidential Information.”  The trial court’s judgment includes
a declaration that Gaughan “took no action pursuant to the terms of the
[Protective] Order to contest the ‘Confidential’ designation of records and,
therefore, the documents designated as ‘Confidential’ by the NCHA are therefore
entitled to confidential treatment under the law.” 

Gaughan
argues that the trial court erred by making this declaration because she gave
written notice to the NCHA’s counsel on March 18, 2009, and included within her
motion for summary judgment a global request for in camera review of the 36,556
pages of confidential documents.  However, the March 18 letter is not in the
summary judgment record.  While the NCHA’s March 23 letter responding to the
March 18 letter is in the summary judgment record, the March 23 letter from the
NCHA’s counsel only mentions a general assertion by Gaughan that she “has the
right to keep and disseminate all information produced by the NCHA in this
matter.”  The March 23 letter does not mention or refute any contentions as to
why all or part of the documents designated as confidential by the NCHA should
not be designated as confidential, nor does it suggest that Gaughan sent the
March 18 letter for the purpose of complying with the protective order.  Thus,
contrary to Gaughan’s contention, the summary judgment record does not
contradict the trial court’s declaration that Gaughan “took no action pursuant
to the terms of the [Protective] Order to contest the ‘Confidential’
designation of records.”  And because Gaughan did not present summary judgment
evidence that she complied with the protective order, the trial court did not
err by declaring that “the documents designated as ‘Confidential’ by the NCHA
are therefore entitled to confidential treatment under the law.” 

Under
the unique facts and procedural posture of this case, we hold that the trial
court did not err by declaring that Gaughan “took no action pursuant to the
terms of the [Protective] Order to contest the ‘Confidential’ designation of
records” and that “the documents designated as ‘Confidential’ by the NCHA are
therefore entitled to confidential treatment under the law.”  We overrule
Gaughan’s second issue.[9]

C. 
Attorney’s Fees

Gaughan
contends in her third issue that the trial court erred by granting summary
judgment for the NCHA’s attorney’s fees because fact issues remain as to
whether the fees were reasonable and necessary. 

“While
reasonableness of an attorney’s fee award often presents a question of fact, an
‘affidavit filed by the movant’s attorney that sets forth his qualifications,
his opinion regarding reasonable attorney’s fees, and the basis for his opinion
will be sufficient to support summary judgment, if uncontroverted.’”  Cammack
the Cook, L.L.C. v. Eastburn, 296 S.W.3d 884, 894 (Tex. App.—Texarkana
2009, pet. denied) (quoting In re Estate of Tyner, 292 S.W.3d 179, 184
(Tex. App.—Tyler 2009, no pet.)); see Bocquet v. Herring, 972 S.W.2d 19,
21 (Tex. 1998) (“In general, ‘[t]he reasonableness of attorney’s fees . . . is
a question of fact for the jury’s determination.’”) (quoting Trevino v. Am.
Nat’l Ins. Co., 140 Tex. 500, 168 S.W.2d 656, 660 (1943)).  Texas courts
consider eight factors when determining the reasonableness of attorney’s fees:

(1) the time and
labor required, the novelty and difficulty of the questions involved, and the
skill required to perform the legal service properly;

 

(2) the likelihood .
. . that the acceptance of the particular employment will preclude other
employment by the lawyer;

 

(3) the fee
customarily charged in the locality for similar legal services;

 

(4) the amount
involved and the results obtained;

 

(5) the time
limitations imposed by the client or by the circumstances;

 

(6) the nature and
length of the professional relationship with the client;

 

(7) the experience,
reputation, and ability of the lawyer or lawyers performing the services; and

 

(8) whether the fee
is fixed or contingent on results obtained or uncertainty of collection before
the legal services have been rendered.

 

Arthur
Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex.
1997) (citing Tex. Disciplinary R. Prof. Conduct 1.04, reprinted in Tex. Gov’t
Code, tit. 2, subtit. G app. (State Bar Rules, art. X, § 9) (West 2005)).

          The
NCHA offered an affidavit by its lead counsel as summary judgment evidence of
the reasonableness and necessity of its attorney’s fees.[10] 
In the affidavit, the NCHA’s counsel outlined the work performed for the NCHA
in the case and, among other things, testified (1) that he had been “practicing
law for over twenty two years in the State of Texas”; (2) that he had been
involved in “numerous cases like this one in Tarrant County, Texas”; (3) that
he was “familiar with the usual and customary fees for the work done on cases
of this type in Tarrant County, Texas”; (4) that the fees charged by his firm
ranged from $100 to $300 per hour “depending upon the person performing these
services and their level of experience”; (5) that the hourly rates were
reasonable and necessary for the services performed; and (6) that “based on the
work done in the case, the amount of time spent, the nature of the tasks
performed[,] and the amount in controversy,” it was his opinion that “the
reasonable and necessary attorneys’ fees incurred by the NCHA” were $84,243. 
Gaughan did not file any controverting summary judgment evidence.  Thus, NCHA
presented uncontroverted summary judgment evidence of four of the Arthur
Anderson factors.  See id.

          Gaughan
argues that the trial court erred by granting summary judgment for the NCHA
because the issues of reasonableness and necessity are questions of fact and
because the fees that the NCHA’s counsel testified were reasonable and
necessary included $5,800 in fees charged before the lawsuit was filed, over $3,200
for services by an attorney not listed on the pleadings in the case for
“attention to file on pending issues,” and “tens of thousands of dollars in
attorneys’ fees for the review and provision of the NCHA’s financial records.”
Gaughan argues that these charges “represented fact issues that precluded the
entry of summary judgment.” 

          First,
while the reasonableness and necessity of attorney’s fees is generally a
question of fact, “[a]n attorney’s affidavit can sufficiently establish the
reasonableness of attorney’s fees for purposes of summary judgment.”  Basin
Credit Consultants, Inc. v. Obregon, 2 S.W.3d 372, 373 (Tex. App.—San
Antonio 1999, pet. denied); see Cammack the Cook, 296 S.W.3d at 894; see
also Bocquet, 972 S.W.2d at 21 (stating that “in general,”
reasonableness of attorney’s fees is a question of fact).  Second, the NCHA
sought more than $84,000 in attorney’s fees, but the trial court awarded the
NCHA $75,000 in attorney’s fees.  It therefore appears that the trial court did
not award the NCHA the $5,800 in fees charged before the lawsuit or the approximately
$3,200 for services by the attorney for “attention to file on pending issues.” 
Even if it did, the applicable statute does not prohibit recovery of fees
incurred before the lawsuit is filed or billed by an attorney not listed on the
pleadings.  See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West
2008) (“In any proceeding under this chapter, the court may award costs and
reasonable and necessary attorney’s fees as are equitable and just.”).  Finally,
we held above that, given the unique factual and procedural context of this
case, the NCHA’s records are entitled to confidential treatment.  Therefore,
the services performed by the NCHA’s attorneys in reviewing, designating, and
producing records to Gaughan were not rendered unreasonable or unnecessary
based on Gaughan’s contention that no NCHA records are entitled to confidential
treatment.

          The
NCHA’s summary judgment established its entitlement to summary judgment as to
the amount of attorney’s fees, and Gaughan’s arguments are mere criticisms of
the amount sought without contradicting evidence.  See Basin Credit
Consultants, 2 S.W.3d at 373, 374 (holding that opposing affidavit
did not create fact issue for summary judgment purposes because it only
criticized the amount of fees sought as excessive and did not “set forth the
affiant’s qualifications or the basis for his opinion as to what a reasonable
fee would be”).  We hold that the trial court did not err by granting summary
judgment to the NCHA for $75,000 in attorney’s fees, and we overrule Gaughan’s
third issue.

V. 
Conclusion

          Having
overruled each of Gaughan’s three issues, we affirm the trial court’s judgment.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER and MCCOY, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting
by Assignment).

 

DELIVERED:  July 28, 2011









[1]Sanders was originally a
plaintiff in this lawsuit, but he withdrew from the lawsuit as a plaintiff.  He
is a party to this appeal because he and Gaughan are jointly and severally
liable under the trial court’s judgment for the NCHA’s attorney’s fees.





[2]The written request
actually cited Texas Business Organizations Code section 22.351, the successor
to article 1396-2.23.  See Tex. Bus. Org. Code Ann. § 22.351 (West 2009). 
However, the parties agree that article 1396-2.23 applies to this case.





[3]Gaughan sought three
additional judicial declarations via summary judgment, but she does not assert
on appeal that the trial court erred by denying her motion for summary judgment
on those grounds.  Thus, we do not address Gaughan’s request for those three
additional judicial declarations.  See generally LeBlanc v. Riley, No.
02-08-00234-CV, 2009 WL 885953, at *3 (Tex. App.—Fort Worth Apr. 2, 2009, no
pet.) (mem. op.) (holding that a general issue broadly challenging a summary
judgment is permissible but requiring an appellant to present argument and
legal authority on appeal to preserve error on a particular cause of action on
which the trial court granted summary judgment).





[4]When the legislature
passes two separate statutes on the same general subject matter, it is presumed
to have done so for a particular purpose, and meaning must be given to both
statutes.  See Aldine Indep. Sch. Dist. v. Ogg, 122 S.W.3d 257, 270
(Tex. App.—Houston [1st Dist.] 2003, no pet.); Font v. Carr, 867 S.W.2d
873, 881 (Tex. App.—Houston [1st Dist.] 1993, writ dism’d w.o.j.).





[5]Because Gaughan is a
member of the NCHA, the applicable statute in this case is article
1396-2.23(B), governing the right of a member of a non-profit corporation, not
the right of the public under article 1396-2.23A.





[6]Texas Business Corporations
Act article 2.44 entitled directors and certain shareholders of a corporation
to review the books and records of a corporation for any proper purpose.  Tex. Rev.
Civ. Stat. Ann. art. 2.44. (expired Jan. 2010); see also Tex. Bus. Org.
Code Ann. § 21.218 (West 2009) (current version of expired article 2.44).  That
statute, which is applicable to for-profit corporations, is similar to article 1396.-2.23,
which is applicable to non-profit corporations and at issue in this case.  Texas
courts have looked to precedent under article 2.44 when dealing with issues
presented under article 1396-2.23.  See CASE, 886 S.W.2d at 289.





[7]Gaughan does not contend
that she has been denied the opportunity to inspect confidential or
attorney-client communications, but the broader principle revealed by BACALA,
Huie, CASE, PMI, and similar opinions—that the scope of
the right of inspection for members of a non-profit corporation may be limited
by legitimate considerations of privilege, trade secrets, and confidentiality—as
well as the differing access granted to members and the public under articles
1396-2.23 and 1396-2.23A, reveals that even members of a non-profit corporation
do not have unfettered access to the non-profit’s corporate records.





[8]Gaughan’s first issue
contends that the trial court erred by declaring that the NCHA’s “financial
records” are entitled to confidential treatment, but it is clear from Gaughan’s
briefing on appeal and in the trial court that she contends that the trial
court erred by entering the protective order concerning any of the records she
requested from the NCHA.  As discussed above, however, Gaughan requested and received
records that a non-member may not inspect.





[9]We do not reach the
issues of whether the NCHA met its burden of establishing confidentiality as to
particular categories of records, or whether a non-member may disseminate to
other non-members information received pursuant to article 1396-2.23A.  Those
issues are not before us given the unique procedural posture of this case and
Gaughan’s request that the trial court declare that all records produced by the
NCHA are not confidential despite her receipt of documents to which a
non-member does not have the right to inspect.  See generally Timpte Indus.,
Inc. v. Gish, 286 S.W.3d 306, 310 (Tex. 2009) (“It is well settled that a
trial court cannot grant a summary judgment motion on grounds not presented in
the motion.”).





[10]The NCHA attached
redacted fee statements and a summary of the rates and fees charged by the law
firm to the affidavit.