

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-09-00450-CV

PAULA GAUGHAN AND DEAN
SANDERS

APPELLANTS

V.

NATIONAL CUTTING HORSE
ASSOCIATION

APPELLEE

----------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

## I. Introduction

Appellants Paula Gaughan and Dean Sanders (collectively, Gaughan) and Appellee National Cutting Horse Association (the NCHA) filed cross-motions for summary judgment in Gaughan's suit against the NCHA for a declaratory judgment that the NCHA's books and records that Gaughan sought to inspect and copy are not confidential. The trial court initially entered a protective order in

favor of the NCHA that prohibited Gaughan from disseminating the NCHA's books and records to others.  Later, the trial court granted the NCHA's motion for summary judgment, denied Gaughan's motion for summary judgment, and incorporated the protective order into the final judgment.  Gaughan contends in three issues that the trial court erred by entering the protective order and thereby prohibiting her from disclosing documents designated as confidential by the NCHA, by granting summary judgment for the NCHA on the ground that the NCHA's records are entitled to confidential treatment under the law, by denying her motion, and by ruling that there are no genuine issues of material fact concerning the reasonableness and necessity of the NCHA's attorney's fees.  We affirm.

## II.  Factual and Procedural Background

The NCHA is a non-profit corporation organized and existing under Texas law.  Gaughan is a member in good standing of the NCHA.[1]  On April 21, 2008, Gaughan made a written request pursuant to article 1396-2.23 of the Texas Non-Profit Corporation Act to "inspect the books and various financial records of the NCHA."[2]  Gaughan requested six categories of documents from the NCHA—

---

[1]Sanders was originally a plaintiff in this lawsuit, but he withdrew from the lawsuit as a plaintiff.  He is a party to this appeal because he and Gaughan are jointly and severally liable under the trial court's judgment for the NCHA's attorney's fees.

[2]The written request actually cited Texas Business Organizations Code section 22.351, the successor to article 1396-2.23.  See Tex. Bus. Org. Code

2

including employment contracts, bank statements, payroll records, and payments to vendors—for the stated purpose that Gaughan was "genuinely interested in fostering increased participation in NCHA events by lowering the costs associated with that participation and making sure that the membership dues and other monies received by the NCHA are being spent with the best interests of the NCHA membership in mind." The NCHA responded to Gaughan's letter on April 28, 2008, enclosing audited financial statements for the years 2004 through 2007, but it requested that Gaughan clarify her stated purpose, pay for staff and professional time necessary to respond to the request, and agree to maintain the confidentiality of certain information relating to third parties (such as employees and vendors) before the NCHA would produce the remaining requested records.

Gaughan responded to the NCHA on May 9, 2008, disagreeing that her stated purpose was inadequate but also clarifying that she wished to review the financial records to confirm that the "NCHA is not guilty of waste or mismanagement in its financial affairs and in the administration of the NCHA's business." Gaughan declined to enter into a confidentiality agreement and objected to paying for staff or professional fees associated with the NCHA's compliance with her inspection request. Gaughan also requested that all responsive documents be produced within one week.

Ann. § 22.351 (West 2009). However, the parties agree that article 1396-2.23 applies to this case.

The NCHA responded on May 13, 2008, again asserting the confidentiality of some of its records, specifically records relating to its employees, third-party vendors, and sponsors. The NCHA stated that the confidentiality of its records "does not mean that you cannot have access to some or all of the information you desire[,] but it does mean that any access you may have must be in accordance with procedures which are in the best interest of [the NCHA] and include fulfilling [the NCHA]'s obligation of confidentiality."

Gaughan filed suit against the NCHA on May 20, 2008, seeking a judicial declaration that she is entitled to inspect and photocopy each of the categories of records identified in her April 21, 2008 letter. Gaughan also sought and obtained a temporary restraining order to prevent the NCHA from destroying or altering the records she sought to inspect and copy. The NCHA filed a motion to dissolve the temporary restraining order and offered to disclose all documents requested by Gaughan subject to entry of a protective order to prevent her disclosure of information the NCHA believed to be confidential. Following the hearing on the NCHA's motion, the trial court dissolved the temporary restraining order and granted the NCHA's request for entry of a protective order.

The trial court then signed a protective order permitting the NCHA to designate certain documents that it had agreed to produce to Gaughan as confidential (by stamping "Confidential" in a conspicuous manner on each page to be so designated) and prohibiting Gaughan from reproducing, disclosing, or disseminating those documents to anyone other than her counsel except upon

4

order of the trial court. The order stated that it was entered solely to facilitate review and provided that at any time after delivery of documents designated as confidential, counsel for Gaughan could challenge the designation by written notice to the NCHA and a motion to challenge the confidential nature of all or a portion of the information, in which event the NCHA would have the opportunity to establish that the disputed documents were entitled to confidential treatment.

After entry of the protective order, the NCHA produced 89,214 pages of documents to Gaughan but designated 36,556 of those pages as confidential as permitted by the protective order. It is undisputed that Gaughan reviewed and copied all documents she requested from the NCHA, including the documents designated as confidential. The NCHA also counterclaimed against Gaughan, seeking recovery of its attorney's fees and a judicial declaration that it had "acted reasonably and in accordance with the law in responding to [Gaughan's] requests to review the NCHA documents."

Gaughan and the NCHA eventually filed cross-motions for summary judgment. In her motion, Gaughan requested, among other things, a judicial declaration that "NCHA may not prevent [her] from disclosing to her fellow NCHA members or to other third parties the substance and form of all records reflecting the NCHA's financial activity."[3] Gaughan argued that articles 1396-2.23 and

---

[3]Gaughan sought three additional judicial declarations via summary judgment, but she does not assert on appeal that the trial court erred by denying her motion for summary judgment on those grounds. Thus, we do not address Gaughan's request for those three additional judicial declarations. *See generally*

5

1396-2.23A of the non-profit corporation act required the NCHA to make its books and records available to members and the general public alike, that the NCHA is therefore precluded from designating any of its financial records as confidential, and that the trial court should withdraw the protective order because it contravenes articles 1396-2.23 and 1396-2.23A. In addition, Gaughan's motion for summary judgment included the following alternative request for relief:

> Strictly in the alternative, and only because [the trial court's] Protective Order otherwise requires it and remains in force until it is withdrawn as requested hereinabove, Gaughan moves the Court to conduct an in camera inspection of the 36,556 pages of NCHA books and records that the NCHA has classified as confidential and, upon inspection of same, declare that they are not properly classified as confidential documents *given the statutory mandate that they be made available to the NCHA members and the general public alike*. [Emphasis added.]

The NCHA's motion sought summary judgment on its claims for a judicial declaration and attorney's fees. Within the motion, the NCHA argued that Gaughan did not need to file the lawsuit to obtain the requested documents; that Texas law supports the trial court's entry of the protective order; that the protective order provided a mechanism for Gaughan to challenge the NCHA's designation of any document as confidential; and that Gaughan had never challenged the NCHA's designation of any document as confidential—despite

---

*LeBlanc v. Riley*, No. 02-08-00234-CV, 2009 WL 885953, at *3 (Tex. App.—Fort Worth Apr. 2, 2009, no pet.) (mem. op.) (holding that a general issue broadly challenging a summary judgment is permissible but requiring an appellant to present argument and legal authority on appeal to preserve error on a particular cause of action on which the trial court granted summary judgment).

6

having possession of the vast majority of the documents for months—but instead claimed that no information contained in the documents requested under art. 1396-2.23 could be treated as confidential and that the protective order regarding the documents requested was contrary to law.

In its final judgment granting the NCHA's motion for summary judgment and denying that of Gaughan, the trial court declared that the NCHA had fully complied with all of Gaughan's requests to review documents of the association and all legal requirements, that the NCHA had designated documents as confidential in accordance with the protective order, that Gaughan had taken no action to contest the designations, and that the documents designated as confidential by the NCHA were thus entitled to confidential treatment as a matter of law. The trial court further ordered Gaughan to return all records marked as "Confidential" to the NCHA and to not disclose, disseminate, or reveal any of the "Confidential" records or their contents to any third parties. This appeal followed.

### III. Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801,*

7

*Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). The reviewing court should render the judgment that the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848.

### IV. Discussion

### A. The Protective Order

Gaughan contends in her first issue that the trial court erred by entering the protective order and declaring by summary judgment that any of the NCHA's records regarding its business transactions with sponsors, vendors, and employees are entitled to confidential treatment under the law. She contends the trial court's orders are contrary to the Texas statutes that require non-profit corporations to make their financial records open and available for inspection and copying by the general public. Specifically, Gaughan argues that because the NCHA is a non-profit corporation obligated by article 1396-2.23A to make its records, books, and annual reports available to the public for inspection and copying, it cannot shield those records behind a claim of confidentiality. The

8

NCHA responds that a member of a non-profit corporation may inspect "a much broader spectrum of records" under article 1396-2.23 than the public is entitled to inspect under article 1396-2.23A and that protective orders are permissible under Texas law to ensure that confidential information provided to members pursuant to these or similar inspection statutes is protected from disclosure to others.

1. **Articles 1396-2.23 and 1396-2.23A**

Article 1396-2.23 of the Texas Non-Profit Corporation Act provides:

A. Each corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of its members, board of directors, and committees having any authority of the board of directors and shall keep at its registered office or principal office in this State a record of the names and addresses of its members entitled to vote.

B. A member of a corporation, on written demand stating the purpose of the demand, has the right to examine and copy, in person or by agent, accountant, or attorney, at any reasonable time, for any proper purpose, the books and records of the corporation relevant to that purpose, at the expense of the member.

Tex. Rev. Civ. Stat. Ann. art. 1396-2.23 (expired Jan. 2010). Similarly, but not identically, article 1396-2.23A provides, in relevant part:

A. A corporation shall maintain current true and accurate *financial records* with full and correct entries made with respect to all *financial transactions* of the corporation, including all income and expenditures, in accordance with generally accepted accounting practices.

B. Based on these records, the board of directors shall annually prepare or approve a *report of the financial activity* of the corporation for the preceding year. . . .

C. All records, books, and annual reports *of the financial activity of the corporation* shall be kept at the registered office or principal

9

office of the corporation in this state for at least three years after the closing of each fiscal year and shall be available to the public for inspection and copying there during normal business hours. The corporation may charge for the reasonable expense of preparing a copy of a record or report.

*Id.* art. 1396-2.23A (expired Jan. 2010) (emphasis added).

## 2. Scope and Purpose of article 1396-2.23A (public's right to inspect)

Gaughan argues that, because article 1396-2.23A mandates public access to the financial records of a non-profit corporation, the protective order allowing the NCHA to shield its financial records from public disclosure by designating them as confidential is contrary to Texas law. However, Gaughan's argument is premised on the incorrect assumption that all of the records of a non-profit corporation that a member is entitled to inspect and copy are financial records available to the public generally. As is clear from article 1396-2.23(B), a member of a non-profit corporation may, following written demand stating a proper purpose, examine "the books and records of [that] corporation relevant to that purpose." *Id.* art. 1396-2.23(B). Under article 1396-2.23A, however, a member of the public may only inspect the "records, books, and annual reports of the *financial activity* of the corporation." *See id.* art. 1396-2.23A (emphasis added). Thus, the NCHA argues, a member of the public may only inspect financial records of a non-profit corporation while a member of the corporation may inspect all records of that corporation. *See id.* arts. 1396-2.23, 1396-2.23A.

The records Gaughan received from the NCHA include both financial records available for inspection by the public and non-financial records not

10

available for inspection by the public.  For example, Gaughan received vendor, sponsorship, and employment contracts and documents containing the addresses and Social Security Numbers of the NCHA's employees.  Article 1396-2.23A, addressing the public's right of inspection, does not provide that the public has the right to inspect records that are not financial records.

Moreover, article 1396-2.23, addressing the right of a member to inspect a broader spectrum of records than is allowed for the public, provides for neither a right of inspection by the public of such records nor a right by a member to publish such information to the public.[4]  Thus, the NCHA argues, and we agree, that Gaughan's theory that she is entitled to disseminate or share with the public all documents she received would engraft a right of inspection by the public onto article 1396-2.23, which speaks only to the right of inspection by members.  If the legislature had intended that a member would have the right to disclose all books and records of a non-profit corporation to the public, there would have been no need for two separate statutes and no need to require a member to provide a written request stating a proper purpose.  Therefore, we decline to adopt Gaughan's interpretation of the two statutes by conflating them so as to provide a

---

[4]When the legislature passes two separate statutes on the same general subject matter, it is presumed to have done so for a particular purpose, and meaning must be given to both statutes.  *See Aldine Indep. Sch. Dist. v. Ogg*, 122 S.W.3d 257, 270 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Font v. Carr*, 867 S.W.2d 873, 881 (Tex. App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.).

11

right of the public to inspect all books and records of a non-profit corporation, including records only available to members.

The Texas Supreme Court has held that the phrase "financial records" in article 1396-2.23A "does not include the names of contributors or members" and that article 1396-2.23A "does not require the blanket disclosure of contributors' names for public inspection." *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 381–82 (Tex. 1998) (hereinafter *BACALA*). In so holding, the *BACALA* court looked to the legislative intent of that statute, observing that it appeared "that article 1396-2.23A was intended to remedy a specific problem: the lack of accountability regarding a non-profit corporation's use of funds solicited from the public." *Id*. at 381 (citing *Texas Appellate Practice & Educ. Resource Ctr. v. Patterson*, 902 S.W.2d 686, 689 (Tex. App.—Austin 1995, writ denied)). In that regard, the court quoted relevant background information from the bill analysis regarding article 1396-2.23A's purpose:

> During the last interim, the author attempted to conduct a study of a non-profit drug rehabilitation program in Houston. This program had been soliciting funds from the public and portrayed itself as a charitable endeavor. However, there were rumors that its funds were being used for investments in such businesses as nightclubs. During the six month investigation, the author of this bill was unable to determine how the program's funds were being used because the records were inadequate. *A major recommendation from the study was that Texas law should be amended to require non-profit organizations soliciting funds from the public to keep adequate records showing how the funds were actually being used.*

*Id.* at 381 (quoting Senate Comm. on Bus. & Indus. Bill Analysis, Tex. S.B. 857, 65th Leg., R.S. (1977)). Thus, the *BACALA* court concluded the purpose of the

12

legislation was not to force non-profit corporations to identify the exact sources of their income but was instead designed "to expose the nature of the expenditures of that money once received from the public and to make non-profit organizations accountable to their contributors for those expenditures." *Id.* The court continued, "[T]he seemingly broad scope of the statute's language is not matched by the legislative intent behind the statute." *Id.*; *see also Patterson*, 902 S.W.2d at 688–89 (concluding legislature designed art. 1396-2.23A as a mechanism for making non-profit corporations accountable for donations solicited from the public).

It follows that, although amounts received from or paid to vendors, sponsors, or employees may constitute "financial records," the underlying contracts themselves (or the employees' addresses and social security numbers) are not financial records that the public is entitled to inspect. *See BACALA*, 982 S.W.2d at 381–82. Thus, even assuming that the public is entitled by art. 1396-2.23A to inspect all financial documents of a non-profit corporation without regard to confidentiality, a question we are not called upon to decide, we must still determine whether documents Gaughan may inspect under art. 1396-2.23 (and which are not available to the public) may be subject to protection from disclosure to others because of confidentiality considerations.[5]

---

[5]Because Gaughan is a member of the NCHA, the applicable statute in this case is article 1396-2.23(B), governing the right of a member of a non-profit corporation, not the right of the public under article 1396-2.23A.

### 3. Scope and Purpose of article 1396-2.23 (member's right to inspect)

Gaughan asserts that the scope of article 1396-2.23, which provides for the inspection rights of a member of a non-profit corporation, is absolute in prohibiting any record from being treated as confidential and does not allow a non-profit corporation to require a pledge or order of non-disclosure in order to inspect and copy its records. We disagree for reasons urged by the NCHA.

Decisions under article 1396-2.23 recognize that the statute is not absolute in its disclosure requirements for members and that orders to protect confidential information are proper in requests made under that statute. In *Citizens Ass'n for Sound Energy (CASE) v. Boltz*, 886 S.W.2d 283, 285–86 (Tex. App.—Amarillo 1994, writ denied), *cert. denied*, 516 U.S. 1029 (1995), a member of CASE, a non-profit association, sought review of CASE's records under article 1396-2.23. CASE opposed the production of certain documents and challenged the constitutionality of the statute. *Id.* at 286. The trial court entered a protective order addressing the confidential nature of the requested documents and ordered CASE to produce such documents under that protective order. *Id.* at 287. On appeal by CASE, the court of appeals affirmed, holding that in view of the protective order which prohibited the member from disclosing the confidential information contained in such documents, CASE's challenges to the statute were without merit. *Id.*

In *Professional Microfilming, Inc. v. Honorable Sam Houston*, 661 S.W.2d 767, 768 (Tex. App.—Fort Worth 1983, orig. proceeding), a case in which

14

mismanagement of Professional Microfilming, Inc. (PMI) was alleged, this court considered a financial records request by a shareholder and former director of PMI. On mandamus, PMI complained of a discovery order by the trial court that would have allowed the shareholder, who had become a competitor of PMI, to review records containing PMI's sensitive customer, cost, and pricing information pursuant to a request made under business corporations act article 2.44.[6] *Id.* at 768–69. PMI asserted that any such review of PMI's confidential information by the shareholder would be damaging to PMI. *Id.* The trial court required PMI to produce the information but entered an order prohibiting the shareholder and former director from disclosing any of the contents of those records to third parties. *Id.* at 769. In denying mandamus relief sought by PMI, this Court stated:

> We also hold that Judge Houston's discovery order adequately considered the sensitivity of the requested data, and the potential for misuse of that data by Hightower and Eikon. Judge Houston's order enjoined Hightower from disclosing the information or using it for purposes other than those connected with the litigation. The order also provided that the documents requested to be produced be sealed in envelopes and filed with the court, to be opened only by order of the court. *Judge Houston thus set up a procedure which would allow him to examine each document before disclosing it to*

---

[6]Texas Business Corporations Act article 2.44 entitled directors and certain shareholders of a corporation to review the books and records of a corporation for any proper purpose. Tex. Rev. Civ. Stat. Ann. art. 2.44. (expired Jan. 2010); *see also* Tex. Bus. Org. Code Ann. § 21.218 (West 2009) (current version of expired article 2.44). That statute, which is applicable to for-profit corporations, is similar to article 1396.-2.23, which is applicable to non-profit corporations and at issue in this case. Texas courts have looked to precedent under article 2.44 when dealing with issues presented under article 1396-2.23. *See CASE*, 886 S.W.2d at 289.

15

*Hightower, and impose even greater restrictions than the initial injunction if necessary.*

*Id.* at 770 (emphasis added). Thus, we acknowledged in *PMI* that the need to protect certain confidential information from dissemination to others may exist *even when* a statutory right to inspection by the shareholder is invoked*. Id.*; *see also Lewis v. Pa. Bar Ass'n*, 701 A.2d 551, 555 (Pa. 1997) (holding documents otherwise accessible to members may be protected from disclosure to third parties by considerations of privacy, such as references to employee's health records; privilege, such as records protected by attorney-client privilege or work product doctrine; or confidentiality where both corporate purpose and public's interest are served by keeping information confidential); *Stroud v. Grace*, 606 A.2d 75, 89 (Del. 1992) (holding corporation's refusal to provide certain financial information to shareholder without confidentiality agreement signed by shareholders did not violate corporation's duty of disclosure); *Pershing Square, L.P. v. Ceridian Corp.*, 923 A.2d 810, 819–20 (Del. Ch. 2007) (holding publication to others by shareholder may be limited where information is confidential and release would harm company); *Disney v. The Walt Disney Co.*, 857 A.2d 444, 446 (Del. Ch. 2004) (holding that shareholder could not use right of inspection to publicly disseminate otherwise confidential records and that production was properly conditioned upon confidentiality agreement, subject to challenge of company's designation in court if parties could not resolve disagreements).

Gaughan relies upon *Sharyland Water Supply Corp. v. Block*, 755 F.2d 397 (5th Cir. 1985), as the single case to support her position. Gaughan cites a statement from the opinion in that case for the proposition that article 1396-2.23 neither forbids a member from disclosing books and records provided to him by a non-profit corporation nor requires the member to pledge non-disclosure to others in order to obtain the corporation's books and records. *Id.* at 398. But *Sharyland* does not support the proposition that no restrictions on dissemination to others can be placed on an article 1396-2.23 request by a member of a non-profit corporation. That case did not deal with the right to inspect books and records under article 1396-2.23; rather, it involved a Freedom of Information Act request made to a third party to whom the corporation had provided information as part of a loan application. *Id.* Moreover, *Sharyland* is distinguishable because it involved audited financial statements that a member of the public is entitled to inspect under article 1396-2.23A. *Id.* at 399. The NCHA does not dispute that its audited financial reports are subject to disclosure under the Freedom of Information Act.

In addition, a member's own right to inspect and copy books and records under article 1396-2.23 does not trump privileges or other rights to confidentiality provided for by Texas law. In *Huie v. DeShazo*, 922 S.W.2d 920, 923–25 (Tex. 1996), the supreme court held that a trustee's duty of disclosure does not override the attorney-client privilege and expressly rejected a claim that the provisions of article 1396-2.23 overrode a claim of attorney-client privilege. In

17

analyzing an argument similar to the one made by Gaughan in this case, the

Texas Supreme Court held as follows:

> [Real party in interest] Chenault relies on *Burton v. Cravey*, 759 S.W.2d 160 (Tex. App.—Houston [1st Dist.] 1988, no writ), for the proposition that the attorney-client privilege does not apply where a party has a right to information independently of the rules of discovery. In *Burton*, condominium owners filed a trial court mandamus action against the condominium association to enforce their statutory right to inspect the association's books and records. *See* Tex. Prop. Code Ann. § 81.209; Tex. Rev. Civ. Stat. Ann. art. 1396-2.23. The trial court allowed inspection of the records, including those in the possession of the association's attorney, finding as a factual matter that the attorney's records constituted part of the association's records. The court of appeals affirmed, holding that the attorney-client privilege did not apply in light of the owners' unqualified right of inspection. 759 S.W.2d at 162.
>
> It is unclear whether the records at issue in *Burton* were merely records of the association in the possession of the attorney, or whether they contained separate confidential attorney-client communications. To the extent that they consisted of the former, we agree that they were not protected. *See* [*Nat'l Tank Co. v.*] *Brotherton*, 851 S.W.2d [193,] 199 [(Tex. 1993)]. *However, to the extent that the court held that the owners' statutory right of inspection somehow trumped the privilege for confidential attorney-client communications, we disapprove of its holding, for the reasons previously discussed. We also disapprove of the court's dicta that the trial court could, in its discretion decline to apply the attorney-client privilege even if all the elements of Rule 503 were met. See* 759 S.W.2d at 162.

*Id.* at 924 (emphasis added). Other jurisdictions agree. *See Schein v. N. Rio Arriba Elec. Coop., Inc.*, 122 N.M. 800, 806 (N.M. 1997) (holding corporate documents subject to attorney-client privilege may be withheld from shareholders but upholding denial of protection for information examined by trial court in camera and found not to contain indicia of confidentiality); *Nat'l Football League*

18

*Props., Inc. v. Superior Court*, 75 Cal. Rptr. 2d 893, 898 (Cal. Ct. App. 1998) (holding shareholder status does not in and of itself entitle an individual to unfettered access to corporate confidences); *Riser v. Genuine Parts Co.*, 150 Ga. App. 502, 504 (Ga. Ct. App. 1979) (holding trial court did not err by denying corporate information to shareholder that contained confidential management information, legal opinions, and personnel evaluation in absence of compelling reason); *Morton v. Rogers*, 20 Ariz. App. 581, 586 (Ariz. Ct. App. 1973) (holding right of director and shareholder to examine books and records does not extend to trade secrets); *see also In re LTV Secs. Litig.*, 89 F.R.D. 595, 604 (N.D. Tex. 1981) (applying federal law in securities fraud suit and recognizing shareholder's statutory or common law right to inspection could not overcome otherwise valid assertion of attorney-client privilege); 5A FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 2239.10 (2011) (collecting cases holding shareholders not entitled to trade secrets or confidential information contained in books and records of corporation unless such affects financial status of corporation or value of stock).[7]

---

[7]Gaughan does not contend that she has been denied the opportunity to inspect confidential or attorney-client communications, but the broader principle revealed by *BACALA*, *Huie*, *CASE*, *PMI*, and similar opinions—that the scope of the right of inspection for members of a non-profit corporation may be limited by legitimate considerations of privilege, trade secrets, and confidentiality—as well as the differing access granted to members and the public under articles 1396-2.23 and 1396-2.23A, reveals that even members of a non-profit corporation do not have unfettered access to the non-profit's corporate records.

Moreover, by accepting and renewing her membership each year in the NCHA, Gaughan has agreed to abide by the rules, policies, and agreements made by the NCHA. Gaughan has not disputed that those rules include the Employee Handbook and the Financial Disclosure Policy and Procedure adopted by the executive committee of the NCHA in 2004, which contain the association's policies for treating employee and third party business information as confidential. By its Employee Handbook and the Disclosure Policy, the NCHA makes representations to its employees, vendors, sponsors, and other persons with whom it does business that it will maintain certain information as confidential. Gaughan disputes that any employment contract or business agreement with vendors or sponsors produced to her by the NCHA contain confidentiality agreements, but the documents in question have not been made a part of the record on appeal. In any event, the Disclosure Policy limits the right of the NCHA and its members to further disseminate such information to others because the NCHA has an obligation to protect the information as confidential. Gaughan has not argued or cited any authority to the effect that she cannot contractually agree not to disseminate to the public or the press any confidential information provided to her as a member.

That Gaughan may be entitled to review the requested records under the applicable statute as a member of the corporation does not mean that she can do so without maintaining the confidentiality of information contained in those documents as agreed by her and as ordered by the trial court. The above-

20

referenced cases recognize that fact.  The same type of prophylactic protective order afforded in both *CASE* and *PMI* was properly afforded by the trial court in this case; that is, Gaughan's receipt, inspection, and copying of the books and records of the NCHA was subject to the procedure outlined in the order prohibiting her from sharing with others the documents designated "Confidential" by the NCHA unless she challenged the confidential designation of specific documents or categories of documents, providing the NCHA the opportunity to furnish proof to support its designation of confidentiality.  We agree with the NCHA that this is the only way to balance and reconcile Gaughan's statutory right to review such documents and the NCHA's duty to maintain as confidential third party business information contained in those documents.

### 4.      Confidentiality as to other members of the NCHA

On appeal, Gaughan has argued that she only wishes to share the documents in question with her fellow members of the NCHA, not the general public, in order to enable the membership to make informed decisions as to their votes for officers and directors as well as to participate in governance by determining the most reasonable and prudent course for the future of the association.  But we note that Gaughan requested in both the trial court and in this court that the protective order be set aside in its entirety, which would enable her to publish all of the information to the press and public as well as her fellow members.  Moreover, the NCHA is a national organization with over 20,000 members.  The NCHA acknowledges that other members have a right to review

21

its records upon written request for a proper purpose stated. However, the Texas statutes make the NCHA the respository of its books and records. If other members request inspection, the NCHA is entitled to require those members to agree to abide by its disclosure policy or to enforce that policy as to confidential information just as it did as to Gaughan. If Gaughan is allowed to disseminate those records to other members, the NCHA will be unable to track the dissemination or to require that those other members abide by its Disclosure Policy as to confidential information to ensure that the confidential information is protected.

Because Gaughan received records from the NCHA that the public does not have the right to inspect under article 1396-2.23A, and because her right to inspect and copy those documents was subject to protection from further disclosure as confidential, the trial court did not err by entering the protective order or by declaring that the records produced to Gaughan were subject to confidential treatment prohibiting her from further disseminating them to others. Moreover, because it is undisputed that the NCHA produced to Gaughan all records that she requested, the trial court did not err by declaring that the NCHA "fully complied with all legal requirements relating to [Gaughan's] requests to review records of the association." We therefore overrule Gaughan's first issue.[8]

---

[8]Gaughan's first issue contends that the trial court erred by declaring that the NCHA's "financial records" are entitled to confidential treatment, but it is clear from Gaughan's briefing on appeal and in the trial court that she contends that the trial court erred by entering the protective order concerning any of the records

**B. Designation of Documents as Confidential Under Protective Order**

Gaughan argues in her second issue that the trial court erred by declaring that the NCHA's financial records are entitled to confidential treatment under the law because it did not examine the records in camera to determine whether the assertion of confidentiality was valid. The NCHA responds that Gaughan did not follow the terms of the protective order to challenge the designation of any records as confidential.

After the trial court entered the protective order, the NCHA produced 89,214 pages of documents to Gaughan and designated 36,556 of those pages as confidential. The protective order provided that "any time after the delivery of Confidential Information, counsel for [Gaughan] may challenge the Confidential designation of all or any portion thereof by providing written notice thereof to counsel for the NCHA" and that if the parties could not reach an agreement, Gaughan could "file a motion with the Court to challenge the confidential nature of all or a portion of the Confidential Information." The trial court's judgment includes a declaration that Gaughan "took no action pursuant to the terms of the [Protective] Order to contest the 'Confidential' designation of records and, therefore, the documents designated as 'Confidential' by the NCHA are therefore entitled to confidential treatment under the law."

---

she requested from the NCHA. As discussed above, however, Gaughan requested and received records that a non-member may not inspect.

Gaughan argues that the trial court erred by making this declaration because she gave written notice to the NCHA's counsel on March 18, 2009, and included within her motion for summary judgment a global request for in camera review of the 36,556 pages of confidential documents. However, the March 18 letter is not in the summary judgment record. While the NCHA's March 23 letter responding to the March 18 letter is in the summary judgment record, the March 23 letter from the NCHA's counsel only mentions a general assertion by Gaughan that she "has the right to keep and disseminate all information produced by the NCHA in this matter." The March 23 letter does not mention or refute any contentions as to why all or part of the documents designated as confidential by the NCHA should not be designated as confidential, nor does it suggest that Gaughan sent the March 18 letter for the purpose of complying with the protective order. Thus, contrary to Gaughan's contention, the summary judgment record does not contradict the trial court's declaration that Gaughan "took no action pursuant to the terms of the [Protective] Order to contest the 'Confidential' designation of records." And because Gaughan did not present summary judgment evidence that she complied with the protective order, the trial court did not err by declaring that "the documents designated as 'Confidential' by the NCHA are therefore entitled to confidential treatment under the law."

Under the unique facts and procedural posture of this case, we hold that the trial court did not err by declaring that Gaughan "took no action pursuant to the terms of the [Protective] Order to contest the 'Confidential' designation of

24

records" and that "the documents designated as 'Confidential' by the NCHA are therefore entitled to confidential treatment under the law." We overrule Gaughan's second issue.[9]

## C. Attorney's Fees

Gaughan contends in her third issue that the trial court erred by granting summary judgment for the NCHA's attorney's fees because fact issues remain as to whether the fees were reasonable and necessary.

"While reasonableness of an attorney's fee award often presents a question of fact, an 'affidavit filed by the movant's attorney that sets forth his qualifications, his opinion regarding reasonable attorney's fees, and the basis for his opinion will be sufficient to support summary judgment, if uncontroverted.'" *Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 894 (Tex. App.— Texarkana 2009, pet. denied) (quoting *In re Estate of Tyner*, 292 S.W.3d 179, 184 (Tex. App.—Tyler 2009, no pet.)); *see Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) ("In general, '[t]he reasonableness of attorney's fees . . . is a question of fact for the jury's determination.'") (quoting *Trevino v. Am. Nat'l Ins.*

---

[9]We do not reach the issues of whether the NCHA met its burden of establishing confidentiality as to particular categories of records, or whether a non-member may disseminate to other non-members information received pursuant to article 1396-2.23A. Those issues are not before us given the unique procedural posture of this case and Gaughan's request that the trial court declare that all records produced by the NCHA are not confidential despite her receipt of documents to which a non-member does not have the right to inspect. *See generally Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) ("It is well settled that a trial court cannot grant a summary judgment motion on grounds not presented in the motion.").

*Co.*, 140 Tex. 500, 168 S.W.2d 656, 660 (1943)).  Texas courts consider eight

factors when determining the reasonableness of attorney's fees:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)

(citing Tex. Disciplinary R. Prof. Conduct 1.04, reprinted in Tex. Gov't Code, tit. 2,

subtit. G app. (State Bar Rules, art. X, § 9) (West 2005)).

The NCHA offered an affidavit by its lead counsel as summary judgment

evidence of the reasonableness and necessity of its attorney's fees.[10]  In the

---

[10]The NCHA attached redacted fee statements and a summary of the rates and fees charged by the law firm to the affidavit.

affidavit, the NCHA's counsel outlined the work performed for the NCHA in the case and, among other things, testified (1) that he had been "practicing law for over twenty two years in the State of Texas"; (2) that he had been involved in "numerous cases like this one in Tarrant County, Texas"; (3) that he was "familiar with the usual and customary fees for the work done on cases of this type in Tarrant County, Texas"; (4) that the fees charged by his firm ranged from $100 to $300 per hour "depending upon the person performing these services and their level of experience"; (5) that the hourly rates were reasonable and necessary for the services performed; and (6) that "based on the work done in the case, the amount of time spent, the nature of the tasks performed[,] and the amount in controversy," it was his opinion that "the reasonable and necessary attorneys' fees incurred by the NCHA" were $84,243. Gaughan did not file any controverting summary judgment evidence. Thus, NCHA presented uncontroverted summary judgment evidence of four of the *Arthur Anderson* factors. *See id.*

Gaughan argues that the trial court erred by granting summary judgment for the NCHA because the issues of reasonableness and necessity are questions of fact and because the fees that the NCHA's counsel testified were reasonable and necessary included $5,800 in fees charged before the lawsuit was filed, over $3,200 for services by an attorney not listed on the pleadings in the case for "attention to file on pending issues," and "tens of thousands of dollars in attorneys' fees for the review and provision of the NCHA's financial records."

27

Gaughan argues that these charges "represented fact issues that precluded the entry of summary judgment."

First, while the reasonableness and necessity of attorney's fees is generally a question of fact, "[a]n attorney's affidavit can sufficiently establish the reasonableness of attorney's fees for purposes of summary judgment." *Basin Credit Consultants, Inc. v. Obregon*, 2 S.W.3d 372, 373 (Tex. App.—San Antonio 1999, pet. denied); *see Cammack the Cook*, 296 S.W.3d at 894; *see also Bocquet*, 972 S.W.2d at 21 (stating that "in general," reasonableness of attorney's fees is a question of fact). Second, the NCHA sought more than $84,000 in attorney's fees, but the trial court awarded the NCHA $75,000 in attorney's fees. It therefore appears that the trial court did not award the NCHA the $5,800 in fees charged before the lawsuit or the approximately $3,200 for services by the attorney for "attention to file on pending issues." Even if it did, the applicable statute does not prohibit recovery of fees incurred before the lawsuit is filed or billed by an attorney not listed on the pleadings. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). Finally, we held above that, given the unique factual and procedural context of this case, the NCHA's records are entitled to confidential treatment. Therefore, the services performed by the NCHA's attorneys in reviewing, designating, and producing records to Gaughan were not

28

rendered unreasonable or unnecessary based on Gaughan's contention that no NCHA records are entitled to confidential treatment.

The NCHA's summary judgment established its entitlement to summary judgment as to the amount of attorney's fees, and Gaughan's arguments are mere criticisms of the amount sought without contradicting evidence. *See Basin Credit Consultants*, 2 S.W.3d at 373, 374 (holding that opposing affidavit did not create fact issue for summary judgment purposes because it only criticized the amount of fees sought as excessive and did not "set forth the affiant's qualifications or the basis for his opinion as to what a reasonable fee would be"). We hold that the trial court did not err by granting summary judgment to the NCHA for $75,000 in attorney's fees, and we overrule Gaughan's third issue.

## V. Conclusion

Having overruled each of Gaughan's three issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: GARDNER and MCCOY, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: July 28, 2011

29